UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

JUN 3 0 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-323-GWU

HAYES IRVIN, JR.,                                              PLAINTIFF,


VS.                    **MEMORANDUM OPINION**


JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to

1

Irvin

Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

Irvin

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Irvin

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

Irvin

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.   Varley  v. Secretary of Health  and Human

Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Hayes Irvin, Jr., was found by an Administrative Law Judge (ALJ)

to have "severe" impairments consisting of complaints of painful feet, of back pain,

and of pulmonary problems, and allegations of nerves.  (Tr. 17).   Nevertheless,

based in part on the testimony of a vocational expert (VE), the ALJ determined that

Mr. Irvin retained the residual functional capacity to perform a significant number of

jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 18-22).

The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether there would

be any jobs which the plaintiff, a man of 41 with the equivalent of a "marginal"

education, borderline intelligence and a history of unskilled work, could perform if he

were limited to "light" level exertion involving only simple, non-detailed tasks, where

public and co-worker contact was casual and infrequent, where supervision was

direct and non-confrontational, and where changes in the work place were infrequent

7

and gradually introduced. In addition, the individual would require the option of sitting or standing at will and no exposure to environmental pollutants such as dust, smoke, fumes, and noxious gases. (Tr. 232-3). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 233).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Although the plaintiff had been awarded benefits due to alcoholism in a September 6, 1995 ALJ decision (Tr. 33-8), these benefits were terminated on May 1, 1996 (Tr. 15) and Mr. Irvin testified that he returned to work following his termination until approximately 2002 (Tr. 221-2, 224). He alleged current inability to work due to problems with breathing, foot and leg pain, and nervousness. (Tr. 88, 225, 228). Despite his breathing problems, which he related to a collapsed lung in 1993, Mr. Irvin admitted that he continued to smoke because of "nerves." (Tr. 223). His left ankle had been broken in March, 2000 and required the placement of a plate and pins, and still hurt constantly, making it difficult to stand or walk. (Tr. 226-7). Mr. Irvin also complained of low back pain and right knee swelling. (Tr. 227-8). In interrogatories, he stated that he could lift 20 pounds with one hand and 30 pounds with both hands. (Tr. 111).

The ALJ's restrictions are supported by what little medical evidence is available and relevant to the plaintiff's current claim.[1]  Dr. Hughes Helm's consultative physical examination of May 18, 2003 showed a "palpable" plate in the right medial foot at the level of the arch, which was non-tender to palpation. (Tr. 123-4). Otherwise, his physical examination was largely normal, apart from a pulmonary function test which showed an FEV1 57 percent of predicted prior to the administration of bronchodilators, and 75 percent post bronchodilation. (Tr. 128-9). However, Dr. Helm found no specific impairments apart from saying that it was "conceivable" that long periods of standing could cause pain in the right foot. (Tr. 125). The ALJ's functional capacity fully accommodates this restriction. The plaintiff's only other recent medical treatment was a February, 2004 visit to the office of Dr. Richard Stoltzfus with a complaint of "not resting well," for which the medication Elavil was prescribed, but no functional restrictions were suggested, and the plaintiff did not follow up as requested. (Tr. 155). The plaintiff also sought

---

[1]The plaintiff argues that a remand is necessary because the ALJ decision includes the phrase "LISTEN TO TAPE" where the ALJ is describing his residual functional capacity finding (Tr. 18, 21), and contains question marks where the ALJ is citing the "grid" rule  which he used as a "framework for decision-making" (Tr. 22). Since the ALJ relied on the testimony of the VE, rather than the grids, the rule used as a framework for decision-making is a pure formality. While the residual functional capacity finding given in the hearing decision may be incomplete, the actual hypothetical question given at the hearing is supported by substantial evidence, as discussed infra. Furthermore, the ALJ's discussion of the evidence in the decision is entirely adequate. Consequently, no useful purpose would be served by a remand merely for these errors.

9

Irvin

emergency room treatment on March 17, 2004 after hurting his back lifting a transmission, but the physician noted a full and painless range of motion, negative straight leg raising, no apparent motor or sensory deficit, and normal reflexes. (Tr. 157-8). The impression was given of an acute sacroiliac strain. (Tr. 158-9).

Counsel for the plaintiff argues on appeal that the ALJ failed to take into account his allegation of inability to read more than a few words despite almost completing a tenth grade education. (Tr. 220, 224-5). Apart from the plaintiff's testimony, she points to a prehearing argument submitted to the ALJ by an associate counsel, which discusses a consultative psychological evaluation in connection with the prior application for benefits conducted by Mary Allen Genthner, M.S., on March 18, 1994. Reportedly, this evaluation, which is not in the Court transcript, showed that the plaintiff had a full-scale IQ score of 71 and could only perform unskilled and semiskilled work. (Tr. 118). While the plaintiff argues that, based on language in the Dictionary of Occupational Titles (DOT), an IQ score of 71 is inconsistent with the jobs described by the VE, an ALJ may accept testimony from a VE which is inconsistent with the DOT. Conn v. Secretary of Health and Human Services, 51 F.3d 607, 610 (6th Cir. 1995). Regarding illiteracy, the plaintiff does not explain why no evidence in this regard was submitted to the ALJ, although several previous psychological and psychiatric examinations are cited in the prehearing brief. (Tr. 117-18). The ALJ in the 1995 award decision gives additional information about the

10

Irvin

Genthner examination in 1994. It included achievement testing showing a third grade reading and arithmetic level, but also states that Mr. Irvin was "mildly intoxicated," and that he told the psychologist he had consumed a six-pack of beer three hours prior to the examination. (Tr. 34-5). The psychologist included "rule out" borderline intellectual functioning among her diagnoses, but not illiteracy, and the ALJ did not determine that the plaintiff was illiterate. (Tr. 35-8). The hypothetical question specified that the plaintiff had a "marginal" education and borderline intelligence and limited the plaintiff to simple, non-detailed tasks, which his work history as a backhoe operator and assembly line worker show that he was capable of performing. (Tr. 89). Given that the plaintiff was represented by counsel at the administrative level, this is not a case in which the Commissioner failed in her duty to develop the record, as in Lashley v. Secretary of Health and Human Services, 902 F.2d 447, 450-1 (6th Cir. 1990).

The decision will be affirmed.

This the ___30___ day of June, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11